FLEMING *v.* WHEELER.

REFORMATION OF INSTRUMENTS—DEEDS — RECONVEYANCE BY PURCHASER—CORRECTION OF MISTAKE.

Complainant, a vendor of lands, having accepted a reconveyance by quitclaim deed on defendant purchaser's failure to pay the price, filed his bill to reform the deed for a mistake in the description, and defendant answered, claiming to have acquired certain outstanding tax titles which he ought to be allowed to retain, and alleging his ignorance of the legal effect of the quitclaim as to those titles. Though the written contract of sale imposed no such obligation, the sale and the price were based upon an oral understanding that defendant was to acquire the tax titles. *Held*, that though defendant was not legally bound to purchase the titles for the security of his vendor, it was equitable for him to carry out his oral promise, and having attempted to do so, and accepted a release from his contract on executing the deed, equity did not demand that he be allowed to disregard the settlement.

Appeal from Oceana; Sessions, J. Submitted June 14, 1908. (Docket No. 79.) Decided June 27, 1908.

Bill by R. Andrew Fleming, trustee, against Morton B. Wheeler and Anne S. Wheeler to correct a description in a deed. From a decree for complainant, defendants appeal. Affirmed.

*Nims, Hoyt, Erwin & Vanderwerp*, for complainant.

*Holmes & Holmes*, for defendants.

HOOKER, J. The complainant in this cause is a trustee under certain conveyances to William B. Hale made by the heirs and executor of William M. Ferry, deceased. He has filed the bill to reform a quitclaim deed of several parcels of land, given to him as such trustee, by the defendant, one or more of which descriptions were incorrect in the range, being mistakenly described as follows: viz., S. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$, sec. 2; N. E. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ of sec. 3; E. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, and N. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of sec. 9; S. W. $\frac{1}{4}$ sec. 9; S. E. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ of sec. 17; S. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ of sec. 23; S. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$ of sec. 30, all in township 13 N. of range 16 W. Also the S. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ sec. 25, in township 13 N. of range 16 West. The bill claims that the land in sections 2, 3, 9, 17, 23 and 30, mutually understood as being the subject of said deed, was in township 13 North of range 15 West, and it prays that defendant be required to execute a proper conveyance to correct said mistake. The testimony is conclusive in support of the allegations of the bill and an affirmance of the decree would be a matter of course, except for the defense set up, which challenges the equity of the relief asked and prays affirmative relief.

These lands were all held by complainant in trust, through the conveyances from the Ferry heirs and executor, and were sold by complainant as such trustee to the defendant by written contract and proper descriptions on May 1, 1905. The contract price was $1,200, and this not being paid when due, the complainant, after futile efforts to obtain payment, wrote the defendant on November 8, 1906, as follows:

"MUSKEGON, MICH., Nov. 8, 1906.
"M. B. WHEELER,
            "Grand Rapids, Mich.
    "*Dear Sir:*   There is past due upon your land contract
of May 1, 1905, $600 and interest at five per cent. from
May 1, 1905, less $25 paid by A. D. Nichols (that should
be O. D. Nichols).   I wish you would adjust this matter
without further delay.   If you do not propose to pay this
amount, I wish you would surrender your land contract.
                        "Yours truly,
                            "R. A. FLEMING."

He received this answer:

                "GRAND RAPIDS, MICH., Nov. 9, 1906.
"Mr. R. A. FLEMING,
            "Muskegon, Michigan.
    "*Dear Sir:*   Answering yours of the 8th I am not de-
sirous of continuing the land contract that I have with
you in my name for myself and associates.   If you will
be kind enough to make up a reconveyance and send it to
me for my signature I will give it my attention promptly."

The correspondence continued as follows:

                "MUSKEGON, MICH., Nov. 10, 1906.
"M. B. WHEELER, Esq.,
            "1001 Michigan Trust,
                "Grand Rapids.
    "*Dear Sir:*   I have received yours of the 9th inst.
Complying therewith I enclose herewith quitclaim deed
from yourself and wife to me as trustee covering the de-
scriptions in your land contract dated May 1, 1905, except
the southeast quarter of the northeast quarter of section
9, town 13 north of range 15 west, which has been deeded
to Obed D. Nichols.   Kindly execute the deed and return
it to me.   I wish you would send me the abstracts of title
and tax histories covering these descriptions.
                        "Yours truly,
                            "R. A. FLEMING."

                "MUSKEGON, MICH., Dec. 1, 1906.
"M. B. WHEELER, Esq.,
            "Grand Rapids.
    "*Dear Sir:*   Complying with yours of November 9th,
I wrote you November 10th enclosing a quitclaim deed to
be executed by yourself and wife in settlement of your
land contract made with me May 1, 1905.   Since then I

have heard nothing from you.    What is the cause of your delay ?

"Yours truly,
"R. A. FLEMING."

"GRAND RAPIDS, MICH., Dec. 3, 1906.
"Mr. R. A. FLEMING,
"Muskegon, Mich.

"*My dear Mr. Fleming:*    In  response to yours of the 1st, I have not forwarded you the instrument you desire on account of Mrs. Wheeler's illness.    I will have her sign this paper this week some time and send it to you, which I trust will be entirely satisfactory.

"Yours truly,
"M. B. WHEELER."

"GRAND RAPIDS, MICH., January 12, 1907.
"Mr. R. A. FLEMING,
"Muskegon, Mich.

"*Dear Sir:*    As requested by you, we are enclosing herewith quitclaim deed dated November 10th, 1906, for descriptions in our land contract of date May 1, 1905, except the southeast quarter of the northeast quarter of section 9, town 13 north, of range 15 west.

"Yours truly,
"M. B. WHEELER."

The deed enclosed was the defective instrument.

Complainant discovered the error in July, 1907, after selling one of the parcels, and asked that the defendant correct it by giving a new deed, which he sent him for that purpose, but it was never executed, hence this suit was begun.

The defense made is that the quitclaim deed was given by Wheeler to carry out the arrangement consented to by him, to surrender his contract for these lands.    Mr. Wheeler asserts in his answer that he was the owner of some tax titles and interests to and in, and perhaps some other claims upon, the premises, some acquired before the land contract was made and some afterward ; that he was under no obligation to convey these under such arrangement to surrender his contract ; that he was informed by complainant that a quitclaim deed was a proper instrument to make in order to accomplish the surrender of the contract, and

that he was not aware that it would have the effect to divest him of other titles or interests than that held and contracted to him by complainant, and that at the time he made the quitclaim deed he had no knowledge in relation to the titles to the lands described therein, and believed and relied on the statements of complainant, viz., that "a quitclaim deed was the only way by which said contract could be surrendered;" that it would simply convey to complainant the interest acquired by the land contract; that all of the tax interests acquired by defendant before and after the execution of the contract had merged in the complainant's contract, and that they legally belonged to him, and that the defendant had no right to retain them.

The substance of the prayer of the answer is that the quitclaim deed already made be interpreted as covering only the titles and interest obtained from the complainant and be declared void for every other purpose. Apparently there is no other objection to a correction of the description. In the trial court, complainant obtained a decree in accordance with the prayer of the bill and defendant has appealed.

A copy (stenographic doubtless) of an oral opinion given by the learned circuit judge states that two options preceded this land contract, which were fully understood by the defendant, as were also the circumstances surrounding the transaction, that both parties understood that the arrangement was one through which the defendant was to acquire outstanding tax titles, and that the price paid complainant was based upon that understanding; oral, it is true, but nevertheless one which had a substantial bearing upon complainant's consent to sell and the price charged.

We find evidence which tends to corroborate this, and although the final written contract imposes no such obligation in terms, the defendant did, after the time that the first option was made, obtain other tax interests and titles, by purchase and redemption, and when

the conclusion was reached to surrender the contract, he apparently recognized the claim that under the dealings had he was in duty bound to surrender the perfected title. His excuse now is ignorance of the law, an ignorance which is most surprising for a dealer in lands and titles to the extent that Wheeler and Opdyke, his associates, appear to have been. Although not legally bound in writing to purchase these titles for the benefit of the security of the vendor, it was equitable for him to carry out his oral promise, and having recognized his obligation by attempting to do so, accepting a release from his promise on executing a deed through the surrender, equity does not demand that he be allowed to disregard such settlement. We therefore agree with the trial judge that there was no fraud on the part of complainant, and that equity does not demand a limitation on the interest mentioned in the quitclaim deed, and that the proofs warrant the decree made by him.

The decree is affirmed, with costs.

GRANT, C. J., and BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.